**In the United States District Court**
**For the Eastern District of Texas**

| | | |
|---|---|---|
| Cassandra King, Individually and as Representative of the Estate of Eric Wayne King, Deceased, D'Eriq King, Individually, Calandria King, Individually, Erica King, Individually, Keshon King, Individually, Frankie Herron, Individually and James Modkins Jr., Individually, | § § § § § § § § § | Civil Action No._____ |
| Plaintiffs, | § § | |
| Vs. | § § | |
| United States of America, Unknown Individuals, and Wellpath LLC | § § | Jury Trial Requested |
| Defendants. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

**To the Honorable Judge of Said Court**:

Now comes the Plaintiffs, Cassandra King, Individually and as Spouse and Representative of the Estate of Eric Wayne King, Deceased, D'Eriq King, Individually and as Son of Deceased, Calandria King, Individually and as Daughter of Deceased, Erica King, Individually and as Daughter of Deceased, Keshon King, Individually and as Son of Deceased, Frankie Herron, Individually and as Mother of Deceased, and James Modkins Jr., Individually and as Father of Deceased, and in support state as follows:

Plaintiffs are persons of the full age of majority and current residents of Florida and Texas. Plaintiffs D'Eriq King, Calandria King, Erica King, Keshon King, Frankie Herron, and James Modkins Jr. file this suit on behalf of themselves and Plaintiff Cassandra King files this suit on behalf of herself and as representative of the Estate of Eric Wayne King, Deceased.

**Index of Counts**

Count I: Federal Tort Claims Act- 28 U.S.C. § 2401, *et seq.* against the United States of America for the negligence in the death of Decedent.

Count II – *Bivens* action for the Right to be Free from Cruel and Unusual Punishment Pursuant to the 8th Amendment of the U.S. Constitution against Unknown Individual Prison Defendants.

Count III – State law negligence claim against Defendant Wellpath.

# I.
## Parties

• Plaintiff Cassandra King is a person of full age of majority and a resident of Texas. Cassandra King sues on behalf of herself as Spouse and as Representative of the Estate of Eric Wayne King, deceased. The Estate of Eric Wayne King, deceased, brings this survival action by and through his wife, Cassandra King, who has standing to represent the decedent's estate in this action pursuant to the holding in *Shepherd v. Ledford*, 962 S.W.2d (Tex. 1998) because there is no necessity for an administration of said estate and the decedent's heirs have or will reach an informal family agreement regarding the distribution of the estate.

• Plaintiff D'Eriq King is a person of full age of majority and a resident of Florida. Plaintiff D'Eriq King sues on behalf of himself as son of Eric Wayne King.

• Plaintiff Calandria King is a person of full age of majority and a resident of Texas. Plaintiff Calandria King sues on behalf of herself as daughter of Eric Wayne King.

• Plaintiff Erica King is a person of full age of majority and a resident of Texas. Plaintiff Erica King sues on behalf of herself as daughter of Eric Wayne King.

• Plaintiff Keshon King is a person of full age of majority and a resident of Texas. Plaintiff Keshon King sues on behalf of himself as son of Eric Wayne King.

• Plaintiff Frankie Herron is a person of full age of majority and a resident of Texas. Plaintiff Frankie Herron sues on behalf of herself as mother of Eric Wayne King.

•     Plaintiff James Modkins, Jr. is a person of full age of majority and a resident of Texas.  Plaintiff James Modkins, Jr., sues on behalf of himself as father of Eric Wayne King.

•     Defendant United States of America (the "United States") is the appropriate defendant under the Federal Tort Claims Act ("FTCA") for the governmental unit, federal Bureau of Prisons ("BOP"). The BOP prison, the Federal Corrections Institution Beaumont Low ("FCC Beaumont") facility where Eric Wayne King, Decedent, was incarcerated is within the United States Eastern District of Texas and may be served with process by serving its regional office located at 4211 Cedar Springs Road, Suite 300, Dallas, Texas 75219 and/or anywhere Defendant may be found. The service of said Defendant as described above can be affected by certified mail, return receipt requested and/or personal delivery.

1.9     Unknown Individual Defendants ("Unknown Defendants") that are employees of the United States and the BOP. Plaintiffs are unsure of the identity of the individual BOP employees that interacted with Eric Wayne King, Decedent or oversaw his care. Plaintiffs believe discovery would reveal the individual Defendants identities and at such time, Plaintiffs will amend the Complaint to add the names of the unknown individual defendants.

1.10     Defendant Wellpath LLC, is a private entity hired by the BOP to provide medical care to prisoners located at the FCC Beaumont facility.  Wellpath may be served with process by serving its registered agent, Corporate Creations Network Inc., at 205 Powell Pl, Brentwood, TN. 37027-7522 and/or anywhere Wellpath LLC's  officers may be found.

## II.
## Jurisdiction and Venue

2.1     This Court has jurisdiction over the federal claims raised in this Complaint under 28 U.S.C. § 1346. Further, this Court has supplemental jurisdiction over the state law claims brought against Wellpath pursuant to 28 U.S.C. §1367.

2.2    Venue is appropriate in the Eastern District of Texas under 28 U.S.C. § 1391 as the acts complained of arose, in the Eastern District of Texas.

### III.
### Nature of the Case

3.1    This is a proceeding for negligence under the FTCA, a civil action for cruel and unusual punishment in violation of the Eighth Amendment against the Unknown Individual BOP employees, and state law negligence claims against Wellpath. All statutory notice requirements have been satisfied before the filing of this lawsuit.

3.2    An administrative tort claim was submitted to the federal BOP for the death of Eric Wayne King pursuant to 28 U.S.C. §§2671-2680 which was sufficient to put the BOP and Wellpath on notice of Plaintiffs' claim. On August 8, 2022, Plaintiffs received a letter denying the claim and for the first time learned Defendant Wellpath was hired to administer medical care to prisoners at the FCC Beaumont facility. This suit is brought within six months from the date of the letter denying Plaintiffs' claim. Plaintiffs have therefore exhausted their administrative remedies under 28 U.S.C. § 2675(a).

### IV.
### Facts Common to All Counts

4.1    Defendant BOP is authorized by the laws of the United States Department of Justice as to operate the Federal Prison. As part of its responsibilities and services, the BOP also operates a law enforcement agency that, among other duties, operates and controls the BOP's prison system, including the FDI Beaumont facility located in Beaumont, Texas, BOP's Health Services Unit ("HSU"), Health Services Clinical Encounter, BOP's Medical Referral Center ("MRC"), BOP's Primary Care Provider Team ("PCPT"). The BOP is responsible for the clinical care of inmates at Bureau institutions and is under the direction of the Unknown Clinical

Director, who provides direct patient care and supervises other health care providers. Administrative responsibility and supervision of non-clinical staff is under the Health Services Administrator's ("HSA") direction. BOP employees are responsible for the care and supervision of inmates through unknown prison officials and prison guards, who, in the course and scope of their employment, were required to observe, watch over, and manage persons placed in custody within the FCC Beaumont facility.

4.2    On information and belief, Defendant BOP contracted with Wellpath as part of a comprehensive managed health care contract to administer medical care to inmates through screening officers, medical screening personnel, medical physicians and personnel, and other employees, who, in the course and scope of their employment, were required to observe, watch over, and manage persons placed in custody within the FCC Beaumont facility. The BOP, the Unknown Defendants, and Wellpath will collectively be referred to as "Defendants."

4.3    At all relevant times herein, prior to the arrival into BOP's custody, Decedent Eric Wayne King ("Decedent" and/or "King") was suffering from Type II Diabetes and heart failure.

4.4    On or about January 7, 2020, Decedent arrived in custody to FCC Beaumont at 5560 Knauth Road, Beaumont, Texas 77705 in the County of Jefferson, Texas. With Decedent came over one hundred (100) pages of medical records, all of which Defendant refused to review.

4.5    On or about January 7, 2020, Decedent was seen by BOP's Health Services Clinical Encounter or the Wellpath equivalent during intake—and noted to having congestive heart failure.

4.6    Based on information and belief, later the same day on January 7, 2020, Decedent was seen by BOP's Health Services Clinical Encounter or the Wellpath equivalent for a follow

up from his initial medical intake examination, after he complained of having shortness of breath. During his follow-up, the attending BOP personnel or Wellpath medical physician and/or personnel noted additional medical diagnosis which included-*hypertensive heart disease with congestive heart failure, and insulin dependent mellitus requiring a pump, hyperlipidemia, and osteoarthritis.*

4.7    On or about January 10, 2020, BOP Medical Services Clinical Encounter or the Wellpath equivalent received Decedent's hemoglobin lab results, that showed his A1C elevated to 11.7%.

4.8    An A1C of 11.7% means that you have Diabetes. Not only that, but your blood sugar is *severely* elevated. *This is a dangerous condition that puts you at risk of kidney failure, stroke, nerve damage, blindness, and heart attack.* Despite his condition, he was returned to his cell.

4.9    On or about February 6, 2020, Decedent was seen by unknown employees of BOP Medical Services Clinical Encounter or the Wellpath equivalent because he was complaining of shortness of breath and kidney pain. Decedent was also showing signs of having a +2 pitting edema.    Despite Decedent showing severe signs of a dire medical condition, unknown employees of BOP Medical Services Clinical Encounter or the Wellpath equivalent decided that there was not a need for any immediate cardiology follow-up or consultation nor any need for any special medical attention. BOP or Wellpath personnel did not set any additional medical appointments or follow-ups for Decedent until March 7, 2020, over a month later.

4.10    On or about February 8, 2020, after undergoing such delay in obtaining approval to visit Decedent, Decedent's wife and children visited with Decedent at the FCC Beaumont facility.

4.11.   On or about February 9, 2020, Plaintiffs Cassandra King, E'riq King, Keshon King, and Calandra King visited Decedent at the FCC Beaumont facility.

4.12.   On or about February 11, 2020, Decedent was seen again by unknown employees of BOP Medical Services Clinical Encounter or the Wellpath equivalent because he had great difficulty breathing. When Decedent's respiratory was check, it was noted that Decedent's respiratory rate was severely high at 64 breaths per minute.

4.13.   On or about February 13, 2020, two days after the respiratory check, Decedent was taken by ambulance to Baptist Hospital of Southeast Texas after being unable to maintain a state of consciousness. Decedent was drowsy and had extremely high blood pressure, and his blood count showed him to have anemia with hemoglobin of 7.1%. In essence, on this day, Decedent was suffering a very dangerous state of congestive heart failure.

4.11   On or about February 13, 2020, despite Decedent requiring an ambulance and needing to be hospitalized, none of Decedent's family members including his wife, Plaintiff Cassandra King was ever notified of her husband's condition.

4.12   According to the BOP's Patient Care Policy, Decedent's family should have been made aware of his serious health condition on several occasions, including on February 9, 2020, during Plaintiff's visit as well as on February 13, 2020 and later on February 14 and 15, 2020. The policy specifically states, "an inmate's serious illness is of immediate concern to the inmate's family; the institution will notify the next of kin promptly. *See* https://www.bop.gov/policy/progstat/6031_004.pdf . However, that never occurred.

4.13   On or about February 14, 2020, (nearly twenty-four (24) hours after returning from being hospitalized) and at all relevant times herein, at approximately 19:17 hours or at 7:17p.m. Decedent, while in BOP's GB Unit became non-responsive. Despite cries by fellow

inmates for assistance by unknown employees of BOP Medical Service Clinical Encounter or the Wellpath equivalent, inmates were unable to obtain assistance, and consequently physically carried Decedent to the medical unit, and rested his body by the door of the medical unit for unknown BOP personnel or Wellpath's medical personnel to assist. **No medical person was present**. At all times relevant herein, Decedent laid on the cold floor of the medical unit, unresponsive, pulseless, breathless, and cyanotic. It is unclear just how long it was before any BOP officer, and/or Wellpath medical person appeared on duty to assist Decedent, but based on information and belief, no officer, agent, jailer, and/or medical person otherwise employed and/or contracted to work for and/or with BOP appeared on duty to help Decedent until February 15, 2020.

4.14    On or about February 15, 2020, and based on information and belief, cardiopulmonary resuscitation was initiated at some time after 8:00 a.m.

4.15    On or about February 15, 2020, and based on information and belief, unknown agents of BOP were instructed to call for an ambulance at some time after 8:00 a.m.

4.16    On or about February 15, 2020, at approximately 9:22:30 a.m. a call was received by the ambulance service from BOP personnel at the FCC Beaumont facility. At approximately 9:40:58 a.m., EMS arrived on scene and made contact with Decedent. At approximately 10:04:33 a.m. Decedent arrived at Medical Center of Southeast Texas. And, at approximately 10:12 a.m., Decedent had been pronounced dead.

4.17    Also on this same day, February 15, 2020, at 9:00 a.m., Plaintiffs Cassandra King, Keshon King, D'Eriq King, and Calandra King arrived at the FCC Beaumont facility to visit Decedent. At approximately 9:15 a.m. Plaintiffs arrived at the visiting room. At no point did anyone at the FCC Beaumont facility come to Plaintiffs to share that Decedent was non-

responsive and/or otherwise having a medical emergency. After fifteen (15) minutes passed, Plaintiff Cassandra King went to the front desk to see if there was a problem, because just the weekend before, Decedent came out to the visiting room much sooner. At that time, Plaintiff was told that Decedent's dorm was performing a head count and that he would be out right after. Then thirty (30) minutes passed, so Plaintiff went to the front desk again to see if anything was wrong. Plaintiff was told the same thing. Then another twenty (20)- thirty (30) minutes passed, and Plaintiff saw medical staff running. At that time, Plaintiffs were called into the hallway and told that a there was a medical emergency with Decedent and that the family would be called from someone with the prison.

4.18    At no point in time was the family informed that Decedent was currently unconscious or dead, nor did anyone ever inform the family that Decedent had been previously hospitalized just two days before. After several hours had passed and while the Plaintiffs waited in their car for an update, someone from the prison called stating that Decedent had passed away at 10:12 a.m.

4.19    On or about February 17, 2020, Defendant BOP's Health Services Clinical Encounter personnel or the Wellpath equivalent documented a doctor's note which stated, "*late entry, long weekend.*" The doctor's note also stated that Decedent was found nonresponsive on the morning of February 15, 2020. However, it is also evident, that Decedent's death was caused and/or contributed as a direct result of unknown BOP employees and/or the Wellpath equivalent's willful, wanton, and blatant disregard for their duties to aid Decedent and to be on duty, to provide medical assistance and/or necessary response.

**Additional Facts Related to Federal BOP and its Employees…**

4.20    According to 18 U.S. Code Section 4042- Duties of Bureau of Prisons, "shall provide suitable quarters and provide for the safekeeping, **care,** and subsistence of all persons charged with or convicted of offenses against the United States or held as witnesses or otherwise; provide for the **protection**, instruction, and discipline of all persons charged with or convicted of offenses against the United States." *Id,* sections (a)(2)-(3).

4.21    Further, according to the FCC Beaumont Handbook, Health Services Section, it requires in part, that the FCC Beaumont Medical Services contracts the League Medical Concepts (LMC) to provide a level of health care consistent with community standards, in a timely fashion." Plaintiffs were informed in the claim denial letter that Wellpath was responsible for the medical care at FCC Beaumont. The FCC Beaumont Handbook requires that "emergency medical care is available 24-hours a day, seven days a week…which includes emergency medical treatment."

4.22    Furthermore, according to the BOP's Medical Classification Algorithm: Medical/Psychiatric Conditions or Disabilities, based on Decedent's medical evaluation as noted by unknown BOP personnel and/or Wellpath personnel, Decedent would have been classified as a Category 3. According to the BOP's own Medical Classification Algorithm and based on unknown BOP personnel and/or Wellpath personnel's actions in assessing Decedent's medical condition and after diagnosing him with a *chronic* illness- congestive heart failure, Decedent required daily or nearly daily nursing interventions. According to Defendant's Medical Classification Algorithm, Decedent's Type II Diabetes was classified as a Level 3.

4.23    According to the BOP, Program Statement- Patient Care, it requires that the Health Service Unit ("HSU") provides urgent and routine health care. It also states that the HSU

is designated part of an institution, including the Medical Referral Center ("MRC") that delivers health care to inmates on an ambulatory or observation basis.

4.24    The BOP requires under its Emergency/Urgent Care Section that each institution provide 24-hour medical, dental, and mental health care. The Administration of Correctional Agencies ("ACA") standards require a four-minute response to life- or limb-threatening medical emergencies. It also requires that a team of "first responders" should be established for each shift, with documented training in first aid and CPR.

4.25    During all relevant times, BOP and Wellpath were aware of and responsible for complying with the aforementioned rules. Despite BOP and Wellpath's knowledge of this duty and obligation, personnel, agents, and employees of BOP and Wellpath deliberately abdicated their responsibilities for the safety, security and welfare of inmates and instead made a mockery of the so-called duty to provide 24-hour emergency services by wholly failing to be present and on duty in the BOP Medical Unit and/or the Medical Referral Center on the evening of February 14, 2020 and for failing to appear on duty until the following morning on February 15, 2020. This gross failure to report to duty was done knowing of Decedent's current dire medical condition and all the while knowing that his well-being as well as the well-being of any other inmate could not possibly be cared for in BOP and Wellpath's absence.

4.26    During all relevant times, although BOP and Wellpath knew that Decedent's health condition required a Level 3 standard of care, and while knowing that Decedent's body was effectively shutting-down especially as it related to his cardiovascular system and respiratory system- trouble breathing, trouble maintaining a state of consciousness, trouble maintaining a regular heart-beat, swollen bodily extremities, Type II Diabetes, +2 pitting edema, etc., and thus requiring special medical attention and care; BOP and Wellpath failed to provide

any level of emergency medical care from approximately 7:19 p.m. on February 14, 2020 until approximately 9:00 a.m. on February 15, 2020.

4.27    During all relevant times, Defendant unknown BOP employees and/or Wellpath employees knew that Decedent struggled with his health as described above, and yet were deliberately indifferent to his high risk of death.

4.28    During all relevant times, unknown BOP employees and/or Wellpath employees despite knowing of Decedent's dire health conditions, were deliberately indifferent, or had a complete and/or reckless disregard to its duty to notify Decedent's family of Decedent's imminent risk of death.

4.29    During all relevant times, unknown BOP employees and/or Wellpath employees, with specific notice of Decedent's ongoing medical issues- specifically including his trouble breathing, trouble maintaining a state of consciousness, trouble maintaining a regular heart-beat, swollen bodily extremities, Type II Diabetes, +2 pitting edema, to name a few- failed to offer or procure appropriate intervention and failed to ensure that he received the necessary medical attention that he needed for his serious, immediate, and life threatening condition.

**V.**
**Causes of Actions**

Plaintiffs re-allege all paragraphs herein.

**Count I: Federal Tort Claims Act- 28 U.S.C. § 2401, *et seq.* against the United States for the negligence in the death of Decedent.**

5.1    The FTCA authorizes private tort actions against the United States under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

5.2     Defendant BOP, through its correction department, its director, its boards, its personnel division, its medical department and/or unit, its staff doctor, its medical referral center, its health service unit, and its employed persons, prison officers, medical screening personnel, medical physicians and personnel and other prison guards, agents, and/or officials owed Decedent a duty of care to ensure he received medical care for his serious medical conditions when he entered BOP's facility whether from BOP employees directly or through Wellpath employees.

5.3     Defendant BOP, through its correction department, its director, its boards, its personnel division, its medical department and/or unit, its staff doctor, its medical referral center, its health service unit, and its employed persons, prison officers, medical screening personnel, medical physicians and personnel and other prison guards, agents, and/or officials breached the duty of care owed to Decedent by, *inter alia*:

a.     ignoring the high risk of death of Decedent on February 14, 2020;

b.     failing to develop, implement, and/or utilize the BOP's 24-hour emergency care policy in accordance with its Patient Care plan as described in the U.S. Department of Justice Federal Bureau of Prisons, last updated on June 3, 2014.

c.     failing to provide adequate staffing or other reasonable means to allow BOP correction officials to be accessible to inmates in emergency situations;

d.     failing to notify Decedent's family of his imminent risk of death and/or serious health condition pursuant to U.S. Department of Justice Federal Bureau of Prison's Patient Care Policy.

e.      failing to staff the prison with sufficient BOP officers to ensure compliance with their duty to reasonably and adequately identify and protect inmates with serious medical needs, including Decedent, from foreseeable vulnerability to serious physical harm;

f.      failing to address and ignoring threats of vulnerability to serious physical harm;

g.      failing to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control correction officials;

h.      failing to appropriately and timely identify and treat serious and life-threatening conditions of inmates like Decedent;

i.      failing to timely refer inmates like Decedent for appropriate medical services, such as calling for an ambulance on the evening of February 14, 2020, when Decedent was first found to be unconscious and nonresponsive, despite clear indications of serious need;

j.      failing and refusing to adequately and timely communicate critical information regarding medical health to BOP or Wellpath health care providers, including failing to call for an ambulance on the evening of February 14, 2020;  and/or

k.      failing and refusing to correct, discipline, and follow-up on deficiencies noted in care, treatment, and/or supervision of inmates.

5.4      As a direct and proximate result of the violations by BOP as set forth herein, Plaintiffs have suffered damages for which they seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

5.5      These acts and omissions constitute the tort of negligence under Texas law.

5.6      Under the FTCA, the BOP is liable for these acts and omissions.

**Count II – *Bivens* action for the Right to be Free from Cruel and Unusual Punishment Pursuant to the 8th Amendment of the U.S. Constitution against Unknown Individual BOP Prison Employees.**

Plaintiffs re-allege all paragraphs herein.

5.5     The Unknown Defendants violated Decedent's Eighth Amendment right to be free from cruel and unusual punishment.

5.6     When Unknown Defendants failed to care for or monitor Decedent's ongoing medical issues, and more specifically ignored Decedent's ongoing and imminent medical issues on February 14, 2020, failed to offer or procure appropriate intervention and failed to ensure that he received necessary prompt emergency medical care, including emergency CPR, and a call for ambulatory services as soon as Decedent became non-responsive in his bunk. Further, the Unknown Individuals were not present and/or available at any time on the evening of February 14, 2020, and thus failed to ensure that Decedent received the necessary medical attention that he needed for his serious, immediate, and life threatening condition.

5.7     The Unknown Defendants' conduct was deliberate decision to deprive Decedent of his life, liberty and/or property.

5.8     The Unknown Defendants' actions can be properly characterized as conscious shocking, in a constitutional sense, and/or was reckless, gross negligence, or deliberate indifference to the rights of Decedent.

5.9     Decedent suffered an injury, which resulted from the deliberate decision to deprive Decedent of his right to necessary prompt emergency medical attention so that Decedent may obtain timely medical treatment that would have saved his life.

5.10    The Unknown Defendants implicitly or explicitly failed to monitor Wellpath and failed to care for and monitor Decedent. The Unknown Defendants' actions amounted to

deliberate indifference to Decedent's rights to receive emergency medical treatment under the Eighth and Amendment of the United States Constitution.

5.12    The Unknown Defendants' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by the BOP employees or Wellpath employees established the conscious disregard for the consequences of their action- the "deliberate indifference"- necessary to trigger municipal liability. *Bd. Of the County Comm'rs v. Brown,* 520 U.S. 397, 47 (U.S. 1997).

5.13    The Unknown Defendants' conduct, actions, and/or inactions were the moving force, directly cause, proximately caused, and/or were a substantial factor in causing the Constitutionality- violative pre-death injuries and death of Decedent and Plaintiffs' damages, as set forth more fully below.

5.14    Plaintiffs seek unliquidated damages within the jurisdictional limitations of this Court.

**Count III – State law health care liability claim against Wellpath.**

Plaintiffs re-allege all paragraphs herein.

5.15    Defendant Wellpath, formerly known as Correct Care Solutions ("CCS") is a healthcare company based in Nashville, Tennessee and one of the nation's largest for-profit healthcare providers for prisoners. Wellpath has been sued more than 1300 times for inadequate care for prisoners and blamed for many prisoner deaths. Wellpath has faced lawsuits across the country as the nation's largest for-profit provider of medical care in correctional facilities, according to a 2019 investigative report by CNN. Just in the last 12 months, multiple suits have been brought against Wellpath involving claims of medical negligence in Texas.

5.16    Defendant Wellpath and its employed persons, medical screening personnel, medical physicians and personnel and other agents, and/or officials owed Decedent a duty of care.

5.17    Defendant Wellpath and its employed persons, medical screening personnel, medical physicians and personnel and other agents, and/or officials breached that duty of care by*, inter alia*:

a.    ignoring the high risk of death of Decedent on February 14, 2020;

b.    failing to act in accordance with the BOP's 24-hour emergency care policy pursuant to its Patient Care plan as described in the U.S. Department of Justice Federal Bureau of Prisons, last updated on June 3, 2014.

c.    failing to provide adequate staffing or other reasonable means to allow Wellpath employees to be accessible to inmates in emergency situations;

d.    failing to notify Decedent's family of his imminent risk of death and/or serious health condition pursuant to U.S. Department of Justice Federal Bureau of Prison's Patient Care Policy.

e.    failing to staff the prison with sufficient Wellpath employees to ensure compliance with their duty to reasonably and adequately identify and protect inmates with serious medical needs, including Decedent, from foreseeable vulnerability to serious physical harm;

f.    failing to address and ignoring threats of vulnerability to serious physical harm;

g.    failing to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control Wellpath employees;

h.    failing to appropriately and timely identify and treat serious and life-threatening conditions of inmates like Decedent;

i.      failing to timely refer inmates like Decedent for appropriate medical services, such as calling for an ambulance on the evening of February 14, 2020, when Decedent was first found to be unconscious and nonresponsive, despite clear indications of serious need;

j.      failing and refusing to adequately and timely communicate critical information regarding medical health, including failing to call for an ambulance on the evening of February 14, 2020;  and/or

k.      failing and refusing to correct, discipline, and follow-up on deficiencies noted in care, treatment, and/or supervision of inmates.

5.18    As a direct and proximate result Defendant Wellpath's employees' actions or omissions as set forth herein, Plaintiffs have suffered damages for which they seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## VI.
## Damages

6.1    Defendants are liable for the wrongs complained of herein, either by virtue of direct participation by their employees or by virtue of encouraging, aiding, abetting, committing, and/or ratifying and condoning the commission of the above-described acts and/or omissions by their employees that proximately caused personal injury and damages to Plaintiffs, which include the following:

a.      Nominal Damages;

b.      Actual Damages;

c.      Compensatory Damages;

d.     Past and future mental anguish damages. The mental anguish, grief, and sorrow Plaintiffs suffered in the past and will continue to suffer in the future as a result of Eric Wayne King's death.

e.     Plaintiffs' loss of companionship and society from the date of the incident and which will continue in the future, including, but not limited to the loss of positive benefits flowing from the love, comfort, companionship, and society that the plaintiffs, in reasonable probability would have received from Eric Wayne King, had he lived.

f.     Plaintiffs' loss of consortium and damage to the father and son/daughter relationship as well as damage to the spousal relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness.

g.     Physical pain in the past. The physical pain and suffering Eric Wayne King suffered prior to his death as a result of his injuries under the Texas Survival Statute.

h.     The physical incapacity and impairment suffered by Eric Wayne King up until his death under the Texas Survival Statute.

i.     The mental anguish Eric Wayne King suffered prior to his death as a result of his physical injuries sustained by the actions and/or inactions of Defendants under the Texas Survival Statute.

j.     The amount of reasonable medical expenses necessarily incurred in the past under the Texas Survival Statute.

k.     The funeral and burial expenses incurred as a result of his death under the Texas Survival Statute.

l.     Punitive damages against the Unknown Defendants and Defendant Wellpath.

m.     Unliquidated damages within the jurisdictional limits of this Court.

n.      Pre-judgment and post-judgment interest. Tex. Fin. Code § 304.001, *et seq.,* and any other applicable law.

## VII.
## Punitive Damages

7.1     Plaintiffs are also seeking punitive damages for the egregious acts and omissions by the Unknown Defendants and Defendant Wellpath for the wrongful death of Decedent.

## VIII.
## Jury Demand

8.1     Plaintiffs request that their *Bivens* and state law claims be heard before a jury.

## IX.
## Prayer

9.1     Given the above, Plaintiffs Cassaundra King, Individually and as Spouse of Eric Wayne King, Deceased, D'Eriq King, Individually and as Son of Deceased, Calandria King, Individually and as Daughter of Deceased, Erica King, Individually and as Daughter of Deceased, and Keshon King, Individually and as Son of Deceased, pray that the judgment on their behalf and against Defendant are as follows:

a.      Nominal Damages;

b.      Actual Damages;

c.      Compensatory Damages;

d.      Past and future mental anguish damages. The mental anguish, grief, and sorrow Plaintiffs suffered in the past and will continue to suffer in the future as a result of Eric Wayne King's death.

e.      Plaintiffs' loss of companionship and society from the date of the incident and which will continue in the future, including, but not limited to the loss of positive benefits

flowing from the love, comfort, companionship, and society that the plaintiffs, in reasonable probability would have received from Eric Wayne King, had he lived.

f.      Plaintiffs' loss of consortium and damage to the father and son/daughter relationship as well as damage to the spousal relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness.

g.      Physical pain in the past. The physical pain and suffering Eric Wayne King suffered prior to his death as a result of his injuries under the Texas Survival Statute.

h.      The physical incapacity and impairment suffered by Eric Wayne King up until his death under the Texas Survival Statute.

i.      The mental anguish Eric Wayne King suffered prior to his death as a result of his physical injuries sustained by the actions and/or inactions of Defendants under the Texas Survival Statute.

j.      The amount of reasonable medical expenses necessarily incurred in the past under the Texas Survival Statute.

k.      The funeral and burial expenses incurred as a result of his death under the Texas Survival Statute.

l.      Punitive damages against the Unknown Defendants and Defendant Wellpath.

m.     Attorney's fees and costs of court under the FTCA for the claims brought against the United States.

n.      Unliquidated damages within the jurisdictional limits of this Court.

o.      Pre-judgment and post-judgment interest. Tex. Fin. Code § 304.001, *et seq.,* and any other applicable law.

WHEREFORE PREMISES CONSIDERED, the Plaintiffs hereby pray that the Defendants be cited to appear and answer herein and upon final hearing, the Plaintiffs have judgment against these Defendants for their damages as set forth above, exemplary damages as allowed by law, and reasonable and necessary attorney fees and costs of court under the FTCA. Plaintiffs pray for all other relief to which they are justly entitled.

Respectfully submitted,

**THE COX PRADIA LAW FIRM, PLLC**

By: /s/ Troy J. Pradia

**Troy J. Pradia**
TX Bar No. 24011945
Fed. Bar ID. 30260
2402 Rosedale Street
Houston, Texas 77004
T: 713.739.0402
F: 713.752.2812
Email: tjp@coxpradialaw.com
Email: eserrvetjp@coxpradia.com
**Attorney-in-Charge for Plaintiffs**