IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| CASSANDRA KING, Individually and as Representative of the Estate of Eric Wayne King, Deceased, D'ERIQ KING, Individually, CALANDRIA KING, Individually, ERICA KING, Individually, KESHON KING, Individually, FRANKIE HERRON, Individually, and JAMES MODKINS JR., Individually,  §§§§§§§§§§ | |
| *Plaintiffs*, § | |
| § | CIVIL ACTION NO. 1:23-CV-00061 |
| VS. § | JUDGE MICHAEL J. TRUNCALE |
| § | |
| UNITED STATES OF AMERICA, IOLA HENDERSON, ZELINA DEBLANC, and RITA WEST, §§§§ | |
| *Defendants*. § | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants' United States of America, Iola Henderson, Zelina Deblanc, and Rita West's Motion to Dismiss. [Dkt. 53]. For the following reasons, the Court **GRANTS** the Motion.

### I.   BACKGROUND

On February 15, 2020, Eric Wayne King ("the Decedent") died as a federal inmate. [Dkt. 37 at ¶ 4.19]. He arrived at the Bureau of Prison ("BOP")'s Low Security Institution of the Federal Correctional Institution, Beaumont ("FCIB"), located in Beaumont, Texas, on January 7, 2020. *Id.* at ¶ 4.4.

The Plaintiffs, direct relatives of the Decedent, accuse the BOP of ignoring all warnings of the Decedent's type 2 diabetes and heart failure issues. *Id.* at ¶¶ 4.3–4.4. Their live Second Amended Complaint states that a healthcare professional noted during the Decedent's initial medical intake that he had congestive heart failure. *Id.* at ¶ 4.5. The Decedent reported shortness of breath on the same day, and another healthcare personnel allegedly followed up and diagnosed him of "hypertensive heart disease with congestive heart failure[] and insulin dependent mellitus." *Id.* at ¶ 4.6 (emphasis omitted). But the BOP supposedly neither responded to these signs nor reviewed extensive medical records that arrived with the Decedent. *Id.* at ¶ 4.4.

The Second Amended Complaint reports that the Decedent's condition continued to worsen. *Id.* at ¶¶ 4.7–4.19. Three days after the Decedent arrived at the FCIB, the institute received a hemoglobin laboratory report indicating that his A1C level was 11.7%, which implied that the Decedent was at risk of kidney failure, stroke, nerve damage, blindness, and heart attack. *Id.* at ¶¶ 4.7–4.8. On February 6, 2020, the Decedent supposedly complained of shortness of breath and kidney pain and showed signs of pitting edema. *Id.* at ¶ 4.9. Five days later, the man allegedly had great difficulty breathing and breathed at the rate of sixty-four breaths per minute. *Id.* at ¶ 4.12. Then, the Decedent was hospitalized two days after the respiratory check because he could not stay conscious and had extremely high blood pressure. *Id.* at ¶ 4.13. The authorities allegedly declined to accommodate the Decedent after each incident, returned him to his cell, and failed to notify his family of his condition. *Id.* at ¶¶ 4.8–4.15.

Plaintiffs charge that this continued inaction led to the Decedent's death on February 15, 2020. *Id.* at ¶ 4.29. On that day, the Decedent became unresponsive. *Id.* at ¶ 4.16. Despite cries from inmates for help, they were unable to obtain assistance, causing them to physically carry the Decedent to the medical unit while unresponsive, pulseless, breathless, and cyanotic. *Id.* Based on information and belief, no jail official appeared—including the Individual Defendants—until sometime after 9:00 a.m. when someone initiated cardiopulmonary resuscitation ("CPR"). *Id.* at ¶¶ 4.16–4.17. Around 9:22:30 a.m., a call was received by the ambulance service from BOP personnel, and an ambulance arrived approximately twenty minutes later. *Id.* at ¶ 4.19. Emergency medical service providers arrived at FCIB and transported him to a hospital at approximately 10:04 a.m. *Id.* Thereafter, the Decedent was pronounced dead at approximately 10:12 a.m. *Id.*

After exhausting their administrative remedies related to their claims under the Federal Tort Claims Act ("FTCA"), Plaintiffs filed their Original Complaint in this Court on February 6, 2023. [Dkt. 1]. Shortly thereafter, on February 27, 2023, they filed their First Amended Complaint, which alleged a FTCA claim against the United States, a *Bivens* action against "Unknown Individual BOP Prison Employees," and a state-law health care liability claim against Wellpath, an entity hired by BOP to provide medical care to prisoners. [Dkt. 4]. Since then, the Court dismissed the FTCA claim against the United States and the state-law claim

against Wellpath. [Dkts. 25, 50]. On January 31, 2024, the Court permitted Plaintiffs ninety days in which to file a Second Amended Complaint naming the Unknown Individual BOP Prison Employees. On April 29, 2024, Plaintiffs timely filed their Second Amended Complaint, substituting Defendants Henderson, Deblanc, and West (hereinafter, "the Individual Defendants") for the Unknown Employees. [Dkt. 37]. In this live Complaint, Plaintiffs allege *Bivens* claims against the United States and the Individual Defendants for violations of the Decedent's Eighth Amendment right from cruel and unusual punishment.[1] *Id.* In response to the allegations, Defendants filed their motion to dismiss. [Dkt. 53]. Plaintiffs timely responded. [Dkt. 56]. The motion is ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). While the Court must accept the well-pleaded facts in the complaint as true, it will "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). "The Court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough well-pleaded facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). A claim is "plausible on its face" when the well-pleaded facts allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

---

[1] Plaintiffs do not allege a standalone survival claim, though they seek damages under the Texas survival statute. *See generally* [Dkt. 37]. Plaintiffs' FTCA claim alleged the tort of negligence against the United States. [Dkt. 4 at ¶¶ 5.1–5.6].

678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.  DISCUSSION

#### A.  *Bivens* Claim Against the United States

In their motion, Defendants argue that the United States cannot be sued for a *Bivens* claim. [Dkt. 53 at 18].  In response, Plaintiffs concede that they cannot bring a *Bivens* claim against the United States. [Dkt. 56 at 2–3]. Plaintiffs are correct in their concession. "If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) (Rehnquist, J.); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994) (Thomas, J.) ("It must be remembered that the purpose of *Bivens* is to deter *the officer*.").

Accordingly, the Court **DISMISSES** Plaintiffs' *Bivens* claim against the United States of America.

#### B.  *Bivens* Claims Against the Individual Defendants

Additionally, the Individual Defendants assert that Plaintiffs' *Bivens* claims against them are barred by the statute of limitations. [Dkt. 53 at 5–7]. In the alternative, they argue that the Court should not adopt a *Bivens* remedy. *Id.* at 7–13. And, even if the Court does adopt a *Bivens* remedy, Defendants argue that Plaintiffs fail to plead a plausible Eighth Amendment claim and that they are entitled to qualified immunity. *Id.* at 13–18. The Court finds that this case should be dismissed with prejudice as untimely, as Plaintiffs did not file their *Bivens* claims within the statute of limitations period and they have not shown that they are entitled to equitable tolling.

### i. Statute of Limitations Accrual

The Supreme Court recognized an implied cause of action against federal agents for monetary damages when the agent violated an individual's constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (Brennan, J.). "A *Bivens* action is controlled by the applicable state statute of limitations." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999) (citing *Alford v. United States*, 693 F.2d 498, 499 (5th Cir. 1982) (per curiam)). Under Texas law, survivors of a decedent "must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death." Tex. Civ. Prac. & Rem. Code § 16.003(b). Although state law governs the statute of limitations, federal law governs accrual. *United Klans of Am. v. McGovern*, 621 F.2d 152, 153 n.1 (5th Cir. 1980) (per curiam); *Adrian v. Selbe*, 364 F. App'x 934, 937 (5th Cir. 2010) (per curiam) ("Federal law . . . determines when a *Bivens* cause of action accrues."). Under federal law, a claim accrues and "the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001) (cleaned up) (quotations and citations omitted).

Here, Plaintiffs became aware of the Decedent's death on February 15, 2020, the day of his death. [Dkt. 37 at ¶ 4.21 (stating that Plaintiffs received a call from the prison informing them of the Decedent's death "[a]fter several hours had passed")]. Therefore, the Court finds that the two-year limitations period accrued on February 15, 2020.

### ii. Exhaustion of Remedies

*Bivens* claims survive the decedent's death. *Carlson v. Green*, 446 U.S. 14, 24–25 (1980); *Hamilton v. Negi*, No. 1:10-CV-00664, 2012 WL 5877928, at *3 (W.D. La. Aug. 31, 2012), *report and recommendation adopted*, 2012 WL 5877872 (W.D. La. Nov. 20, 2012) ("Though a *Bivens* claim may be brought via a survival action, to do so, the decedent must have a viable cause of action on the date of his death."). Before filing a *Bivens* suit in federal court, federal prisoners must first exhaust administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Federal prisoners suing

under *Bivens* . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."). During this period of exhausting administrative remedies, the statute of limitations is tolled. *Starks v. Hollier*, 295 F. App'x 664, 665 (5th Cir. 2008) (per curiam) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001)).

Here, Defendants argue that Plaintiffs are not entitled to this tolling period as they "do not fall under the exhaustion requirement of 42 U.S.C. § 1997e because none of the Plaintiffs are a federal prisoner." [Dkt. 53 at 6]. The Court agrees. The statute defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The definition does not encompass survivors of a deceased prisoner. *Id.* Therefore, Plaintiffs did not need to exhaust their administrative remedies on their *Bivens* claims, meaning that they had two years from the Decedent's death—e.g., until February 15, 2022—to file their *Bivens* action.

However, even if Plaintiffs were required to exhaust administrative remedies before filing their *Bivens* claims, they failed to do so. Defendants argue that Plaintiffs' exhaustion of administrative remedies related to their (previously dismissed) FTCA claims "has no bearing on Plaintiffs' requirement to file their *Bivens* claims in a timely manner." [Dkt. 53 at 6]. In response, Plaintiffs argue that they properly exhausted the administrative remedies but note only their efforts as applied to their FTCA claims. [Dkt. 56 at 10–11]. The Court reviewed the administrative forms[2] attached to Plaintiffs' response. The forms lack facts related to constitutional violations, instead claiming wrongful death damages and pleading that the Decedent "died due to lack of medical care as a result of the prison empoyee's [sic] negligence." [Dkt. 56-2]. Furthermore, the complaint provided a summary of Plaintiffs' submission of an "administrative tort claim" to the BOP, citing the FTCA and claiming that the claim was "sufficient to put the BOP and Wellpath on notice of [their] claims," not once mentioning the Individual Defendants. [Dkt. 37 at ¶ 3.2]. But Plaintiffs' *Bivens* claims are not tort claims; they are civil rights claims with their own unique exhaustion requirements. *Tijerina v. United*

---

[2] These forms were prescribed by the Department of Justice specifically for FTCA claims. [Dkt. 56-2].

*States*, No. 5:16CV162, 2018 WL 3321466, at *6 (E.D. Tex. Jan. 23, 2018), *report and recommendation adopted*, No. 5:16CV162, 2018 WL 1477494 (E.D. Tex. Mar. 27, 2018) ("Claims under *Bivens* and under the Federal Tort Claims Act have two separate avenues for exhaustion of administrative remedies."). Given this separation between FTCA and *Bivens* exhaustion requirements, Plaintiffs were obligated to file their *Bivens* claims within two years of the Decedent's death. But they did not do so. Their constitutional violations were not alleged until the suit was filed with this Court on February 6, 2023, nearly three years after the Decedent's death. Accordingly, the Court finds that Plaintiffs' *Bivens* claims are untimely.

### iii. Equitable Tolling

Plaintiffs argue that even if they failed to meet the statute of limitations on their *Bivens* claims, the doctrine of equitable tolling applies. [Dkt. 56 at 11–14].

"In determining whether a statute of limitations should be tolled, federal courts may look to state tolling provisions as well as to federal equitable tolling doctrines if appropriate." *Brooks v. Menifee*, 269 F. App'x 441, 442 (5th Cir. 2008) (per curiam) (first citing *Burge v. Par. of St. Tammany*, 996 F.2d 786, 788 (5th Cir. 1993); and then citing *Rodriguez v. Holmes*, 963 F.2d 799, 805 (5th Cir. 1992)). The party invoking equitable tolling bears the burden of demonstrating its applicability. *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002).

Courts may apply equitable tolling "in limited circumstances to prevent a plaintiff from unjustly losing a claim vigorously pursued." *Perez v. United States*, 167 F.3d 913, 919 (5th Cir. 1999). The Supreme Court has stated that "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (Alito, J.) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). This second prong "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id.* at 257 (emphasis in original). Plaintiffs cannot rely on equity to save their claim when they do not act diligently in pursuing it. *Galindo v. U.S. Dep't of Just.*, 153 F. App'x 333, 334 (5th Cir. 2005)

7

(per curiam) (citing *Wilson v. Sec'y of Dep't of Veterans Affs.*, 65 F.3d 402, 404–05 (5th Cir. 1995)). Furthermore, "[e]quitable tolling has been granted most frequently when a defendant has actively misled a plaintiff about the cause of action or has prevented him 'in some extraordinary way from asserting his rights.'" *Wilson v. U.S. Penitentiary Leavenworth*, 450 F. App'x 397, 399 (5th Cir. 2011) (quoting *Teemac*, 298 F.3d at 457) (finding no abuse of discretion when the plaintiff failed to allege facts that suggested that the *Bivens* defendants "took any action to preclude him from filing his complaint within the two-year limitation period").

Here, Plaintiffs argue that equitable tolling should apply for several reasons. First, they argue that they diligently pursued their claims against the Individual Defendants. [Dkt. 53 at 12]. In particular, they state their counsel sent a letter to the BOP four days after the Decedent died, placing it and its employees on notice of Plaintiffs' claims. *Id.* The Court acknowledges that they timely pursued the administrative remedies related to their FTCA claims *against the United States*. *Id.* However, as distinguished earlier, FTCA and *Bivens* claims have separate and distinct exhaustion-of-remedies requirements, and Plaintiffs' status as non-prisoners did not provide them a tolling period.

Additionally, Plaintiffs further state that they diligently sought to identify the Individual Defendants but that the United States did not disclose their identities until September 9, 2023.[3] *Id.* at 13. Plaintiffs, however, do not provide any clarity regarding their efforts to identify the Individual Defendants before this litigation commenced in 2023. *See generally* [Dkt. 53].

Furthermore, Plaintiffs state that they "had no reasonable opportunity to file suit against the Individual Defendants within the two-year limitations period" because they needed to exhaust their FTCA remedies before naming the United States as a party and accessing the Individual Defendants' identities during discovery. *Id.* at 13. The Court is not persuaded by this argument. The Federal Rules of Civil Procedure offer several ways in which Plaintiffs could have obtained the Individual Defendants' identities before adding

---

[3] Even then, Plaintiffs did not file their Second Amended Complaint until April 2024 (after obtaining the Court's permission in January 2024), *seven months* after discovering their identities. They did not amend or seek leave to amend the complaint upon discovery of their identities.

8

the United States as a party upon completion of their FTCA exhaustion requirement. *See, e.g.*, Fed. R. Civ. P. 26(d)(1) (permitting expedited discovery when authorized by court order); *Strike 3 Holdings, LLC v. Doe*, No. 4:25-CV-00215, Dkt. 5 (E.D. Tex. Apr. 11, 2025) (Truncale, J.) (permitting expedited discovery to obtain the Doe defendant's identity); Fed. R. Civ. P. 45 (directing the process for obtaining subpoenas). The United States' presence as a party was not a requirement to discover the Individual Defendants' identities.

Finally, Plaintiffs do not provide any facts or evidence suggesting that the Individual Defendants misled them about their claims or prevented them in an extraordinary way from asserting their rights. *Wilson*, 450 F. App'x at 399. The closest allegations they make relevant to identity disclosure are that "[o]btaining information from the BOP is not an easy task," that their identities were not disclosed until September 2023, and that "[i]t was impossible or exceedingly difficult for Plaintiffs to discover the identities of the Individual Defendants employed by the BOP involved in King's death." [Dkt. 56 at 12–13]. None of these allegations suggest that the Individual Defendants, the BOP, or the United States misled Plaintiffs or prevented them from exercising their rights.

For these reasons, the Court finds that equitable tolling is not appropriate here. Accordingly, the Court **DISMISSES WITH PREJUDICE** the *Bivens* claims against the Individual Defendants as untimely.

## IV.   CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss [Dkt. 53] is hereby **GRANTED WITH PREJUDICE**. It is further **ORDERED** that all Court dates and deadlines are hereby **VACATED** and that all pending motions herein are **DENIED AS MOOT**.

This constitutes a **FINAL JUDGMENT**, and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 13th day of June, 2025.**

Michael J. Truncale
United States District Judge